**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA,
*for the use and benefit of*
POSTEL INDUSTRIES, INC.,

        Plaintiff,

v.                                                                    Case No. 6:12-cv-1228-Orl-37DAB

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA;
and FEDERAL INSURANCE
COMPANY,

        Defendants,

and

BRASFIELD & GORRIE, LLC,

        Intervenor.

---

**ORDER**

This cause is before the Court on the following:

1. Intervenor, Brasfield & Gorrie, L.L.C.'s Motion to Confirm Arbitration Award Against Plaintiff and for Entry of Judgment with Interest (Doc. 25-1), filed December 27, 2013;

2. Plaintiff's Motion to Vacate Award of Arbitrators and Request for Evidentiary Hearing (Doc. 31), filed March 14, 2014;

3. Brasfield & Gorrie, L.L.C.'s Response and Incorporated Memorandum in Opposition to Plaintiff's Motion to Vacate (Doc. 33), filed March 27, 2014;

4. Intervenor, Brasfield & Gorrie, L.L.C.'s Motion for Sanctions (Doc. 38), filed April 21, 2014;

5. Plaintiff's Response to Intervenor, Brasfield & Gorrie, L.L.C.'s Motion for Sanctions (Doc. 39), filed May 5, 2014; and

6. B&G's Reply in Support of Its Motion for Sanctions (Doc. 42), filed May 12, 2014.

Upon consideration, the Court finds that the motion to confirm the arbitration award is due to be granted, the motion to vacate the award is due to be denied, and the motion for sanctions is due to be granted.

## BACKGROUND

In this Miller Act case, Intervenor Brasfield & Gorrie ("B&G") contracted with the U.S. Department of Veterans Affairs ("VA") to construct a VA hospital in Orlando, Florida. (Doc. 31-1, p. 2; Doc. 33, p. 1.) B&G then entered into a subcontract with Plaintiff Postel Industries, Inc. ("Postel") to fabricate and install the hospital's interstitial steel. (*See* Doc. 33, p. 1.) As required by the Miller Act, 40 U.S.C. § 3131(b)(2), B&G furnished a payment bond to guarantee payment to its subcontractors and suppliers.[1] (*Id.*)

Before the hospital's completion, a dispute arose between B&G and Postel involving construction site conditions and the quality and pace of Postel's work. (Doc. 31-1, pp. 2–3; Doc. 33, pp. 2–3.) Ultimately, B&G stopped payment and Postel discontinued performance. (Doc. 31-1, p. 3.)

On August 9, 2012, Postel filed this action against B&G's sureties, seeking compensation from the payment bond for its partial performance. (Doc. 1.) The Court compelled arbitration and stayed the case. (Doc. 16.) At the arbitration, B&G raised its

---

[1] Specifically, B&G contracted with Defendants Travelers Casualty and Surety Company of America and Federal Insurance Company to furnish the payment bond. (*See* Doc. 1, ¶ 7; Doc. 33, p. 1.)

2

own claim for recovery of costs incurred to complete and correct Postel's incomplete and allegedly non-conforming work. (*See* Doc. 33, pp. 1–2.) On December 16, 2013, an American Arbitration Association panel found for B&G and awarded it $4,245,837.76, plus the costs of the proceeding. (Doc. 25-7.)

B&G intervened in this action and now moves to confirm the arbitration award. (Docs. 25-1, 30.) Postel moves to vacate the award for evident partiality on the part of the arbitration panel. (Doc. 31.) B&G opposes the motion to vacate (Doc. 33) and moves to sanction Postel and its counsel for frivolous post-arbitration litigation (Doc 38). Postel opposes the motion for sanctions. (Doc. 39.) B&G replied. (Doc. 42.) This matter is now ripe for the Court's adjudication.

## STANDARDS

The Federal Arbitration Act ("FAA") provides that, "[o]n application for an order confirming [an] arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) (quoting 9 U.S.C. § 9). "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Id.*

Under the "evident partiality" exception, a court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). Evident partiality exists "only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998). "[T]he evident partiality

exception is to be strictly construed," and the "alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Id.* (citations and internal quotation marks omitted).

"When a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken." *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913 (11th Cir. 2006), *abrogated on other grounds by Frazier v. CitiFinancial Corp.*, 604 F.3d 1313 (11th Cir. 2010). Accordingly, "if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." *Id.*

## DISCUSSION

"The FAA presumes the confirmation of arbitration awards, and federal courts should defer to an arbitrator's decision wherever possible." *Id.* at 909. B&G's motion to confirm the arbitration award is therefore due to be granted unless Postel can demonstrate that one of the narrow statutory grounds for vacatur applies in this case. *See Hall St. Assocs.*, 552 U.S. at 587.

Postel contends that the arbitration award should be vacated under the FAA's "evident partiality" exception. (Doc. 31-1, pp. 4–10 (citing 9 U.S.C. § 10(a)(2)).) Specifically, Postel argues that Arbitrator Nuechterlien, a member of the panel in this case, was evidently partial to B&G because: (1) he knew two of B&G's attorneys from prior social gatherings and had previously mediated cases in which those attorneys were involved; (2) at the time of the arbitration, he knew but did not disclose that his former legal secretary was employed by the law firm representing B&G; and (3) he also knew

but did not disclose that B&G's general counsel had met his former law partner at a social gathering in Washington, D.C., during the arbitration. (*Id.* at 5–6; Doc. 31-4, ¶¶ 3–4.)

No reasonable person would believe that Arbitrator Nuechterlien's professional relationships with his former secretary and with counsel for B&G would create a potential conflict. Regarding the B&G attorneys,

> familiarity due to confluent areas of expertise does not indicate bias. Rather, so long as the previous interactions do not represent part of an ongoing business relationship, it may be an asset, since an arbitrator's experience in an industry, far from requiring a finding of partiality, is one of the factors that can make arbitration a superior means of resolving disputes.

*Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1340 (11th Cir. 2002) (citation and internal quotation marks omitted). Regarding B&G's relationship with Arbitrator Nuechterlien's former legal secretary and former law partner, Postel has not provided any indication that the arbitrator knew of those relationships (*see* Doc. 31-1), and in any event, the arbitrator's connection to B&G by virtue of those relationships is far too attenuated to reasonably suggest bias. *See Austin S. I, Ltd. v. Barton-Malow Co.*, 799 F. Supp. 1135, 1142 (M.D. Fla. 1992) ("A trivial relationship does not create the appearance of impropriety necessary to violate 9 U.S.C. § 10(b); there must be a substantial relationship between the arbitrator and a party in order to establish 'evident partiality' under the statute."). In short, Arbitrator Nuechterlien's alleged partiality was at best "remote, uncertain and speculative," and Postel has therefore failed to make out a prima facie case of evident partiality.[2] *Gianelli*, 146 F.3d at 1312. The motion to

---

[2] Postel also briefly argues that Arbitrator Nuechterlien's rejection of certain legal arguments during the arbitration proceedings evinces bias. (Doc. 31-1, pp. 7–9.) Challenges to the merits of an arbitral decision are not appropriately raised under § 10(b). *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1015 n.18 (11th Cir. 1998). The Court therefore rejects this argument.

vacate the arbitration award is therefore due to be denied, and the motion for confirmation of the award is due to be granted.³ *See Hall St. Assocs.*, 552 U.S. at 587.

As to the motion for sanctions, the U.S. Court of Appeals for the Eleventh Circuit has plainly directed that, "if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions." *B.L. Harbert*, 441 F.3d at 913. Here, while Postel attacks the arbitration award under a valid statutory provision, its motion to vacate is woefully deficient factually and reflects the "never-say-die" attitude that robs arbitration proceedings of their ability to provide speedy, less costly, and final resolution. *See id.* Accordingly, because Postel's motion to vacate has no reasonable factual basis and has "unreasonably and vexatiously" multiplied the proceedings in this action, B&G's motion for sanctions is due to be granted. *See* Fed. R. Civ. P. 11(c) (permitting issuance of sanctions for factually frivolous motions); 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). B&G will be awarded costs and attorney's fees reasonably incurred in defending against Postel's motion to vacate. *See id.*

---

³ In connection with its motion for confirmation of the arbitration award, B&G seeks an award of post-arbitration, pre-judgment interest calculated according to Florida's statutory interest rate on judgments. (*See* Doc. 25-1, p. 3 (citing Fla. Stat. § 55.03).) The Court finds in its discretion that such an award is due to be granted. *See Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998) ("In the absence of a controlling statute, federal courts' choice of a rate at which to determine the amount of prejudgment interest to be awarded is . . . a matter for their discretion. That choice is usually guided by principles of reasonableness and fairness, by relevant state law, and by the relevant fifty-two week United States Treasury bond rate, which is the rate that federal courts must use in awarding *post*-judgment interest.").

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Intervenor, Brasfield & Gorrie, L.L.C.'s Motion to Confirm Arbitration Award Against Plaintiff and for Entry of Judgment with Interest (Doc. 25-1) is **GRANTED**.

2. Plaintiff's Motion to Vacate Award of Arbitrators and Request for Evidentiary Hearing (Doc. 31) is **DENIED**.

3. The arbitration award (Doc. 25-7) is **CONFIRMED**.

4. On or before Friday, August 1, 2014, Brasfield & Gorrie is **DIRECTED** to submit to the Court's email address a proposed final judgment in Word format. The proposed final judgment should include a calculation of the post-arbitration-award, pre-judgment interest which will have accrued under Florida Statutes § 55.03 as of August 1, 2014. *See supra* note 2.

5. Intervenor, Brasfield & Gorrie, L.L.C.'s Motion for Sanctions (Doc. 38) is **GRANTED**.

6. On or before Friday, August 1, 2014, Brasfield & Gorrie is **DIRECTED** to file itemized time records of costs, expenses, and attorney's fees incurred in defending against the motion to vacate (Doc. 31) so that the Court can determine an appropriate sanction.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 18, 2014.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record