**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA,
*for the use and benefit of*
POSTEL INDUSTRIES, INC.,

        Plaintiff,

v.                                                                                            Case No. 6:12-cv-1228-Orl-37DAB

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA;
and FEDERAL INSURANCE
COMPANY,

        Defendants,

*and*

BRASFIELD & GORRIE, LLC,

        Intervenor.

---

## ORDER

This cause is before the Court on the following:

1. Brasfield & Gorrie, LLC's Notice of Filing Itemized Time Records (Doc 44), filed July 29, 2014;

2. Steve Williard's Verified Motion for Reconsideration (Doc. 49), filed August 13, 2014;

3. Plaintiff and Plaintiff's Counsel's Response to Brasfield & Gorrie, LLC's Notice of Filing Itemized Time Records (Doc. 50), filed August 13, 2014; and

4. Response to Steve Williard's Motion for Reconsideration (Doc. 51), filed August 27, 2014;

In this Miller Act case, subcontractor Postel Industries, Inc. ("Postel") moved to vacate an arbitration award issued in favor of contractor Brasfield & Gorrie, LCC ("B&G"). (*See* Doc. 31.) In support, Postel argued that one of the arbitrators had evinced "evident partiality" towards B&G during the proceedings and in the arbitration award. (*See* Doc. 31-1, ¶ 10 (citing 9 U.S.C. § 10(a)(2)).)

Central to Postel's motion were several purported indicia of bias. (*See id.* ¶¶ 6–9, 12–15.) In its response, B&G demonstrated that none of those indicia sufficed to show evident partiality under controlling precedent. (*See* Doc. 33, pp. 4–11.) First, Postel pointed out that the arbitrator knew B&G's counsel from their participation in prior proceedings before him and their common membership in various professional organizations. (*See* Doc. 31-1, ¶ 8.) B&G responded that "[f]amiliarity due to confluent areas of expertise does not indicate bias," *Univ. Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1340 (11th Cir. 2002), and that "[a]n arbitrator's experience in an industry, far from requiring a finding of partiality, is one of the factors that can make arbitration a superior means of resolving disputes," *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998). (*See* Doc. 33, pp. 5–6.) Second, Postel averred that the arbitrator *may* have known but failed to disclose that his "former legal secretary" was working for the law firm representing B&G and that his former law partner had spoken with B&G's general counsel at a "social gathering" during the arbitration.[1]

---

[1] Notably, Postel's only evidentiary support for this argument was a four-paragraph affidavit from its own president. (*See* Doc. 31-4.) B&G, on the other hand, presented affidavits from the "former legal secretary" herself, as well as its general counsel. (*See* Docs. 35, 37.) Jeanne Chase, the "former legal secretary," swore that she had not worked for the arbitrator in 30 years, had spoken to him only twice since then, and had never worked for the law firm representing B&G. (*See* Doc. 37, ¶¶ 2–3.) Leslie O'Neal-Coble, B&G's general counsel, clarified that the "social gathering" to which

2

(*See* Doc. 33-1, ¶¶ 8, 12; Doc. 31-4, ¶¶ 2–4.) B&G responded that nondisclosures do not indicate evident partiality unless the arbitrator had *actual* knowledge of an undisclosed "business or other connection that might create a reasonable impression of possible bias"—that is, a connection demonstrating bias that is "direct, definite and capable of demonstration *rather than remote, uncertain and speculative*." *Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 828–29 (11th Cir. 2011) (emphasis added) (quoting *Gianelli Money Purchase Plan & Trust v. ADM Investor Servs.*, 146 F.3d 1309, 1312 (11th Cir. 1998)); (Doc. 33, pp. 4, 7–8.) Third, Postel argued that the arbitrator misapplied substantive law during the proceedings to B&G's benefit. (Doc. 31-1, ¶¶ 13–14.) B&G responded that an arbitrator's misapprehension, misapplication, or even manifest disregard of the law does not evince bias for purposes of 9 U.S.C. § 10(a)(2). (*See* Doc. 33, p. 10 (citing *Scott*, 141 F.3d at 1015; *Aviles*, 435 F. App'x at 829).)

Given its merits, B&G's response should have dispelled Postel of any objectively reasonable belief that it would prevail, but Postel did not withdraw the motion to vacate. B&G accordingly moved to sanction Postel and its counsel if Postel continued to press its baseless post-arbitration challenge. (*See* Doc. 38, p. 3 (citing *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913–14 (11th Cir. 2010) (holding that "if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions")).) Undaunted, Postel pressed on.[2]

---

Postel's president referred was a yearly ABA event held in Washington, D.C., and attended by over sixty people. (*See* Doc. 35, ¶ 7.) She acknowledged being seated at the same dinner table as an attorney who had been the arbitrator's law partner approximately 18 years earlier, but she swore that the two never spoke about the arbitrator or the pending arbitration. (*See id.*)

[2] In its response to B&G's motion for sanctions, Postel invoked the general proposition that if "speculative dicta" in controlling authority supports a party's position,

3

On July 18, 2014, the Court denied Postel's motion to vacate, confirmed the arbitration award, and granted B&G's motion for sanctions. (*See* Doc. 43, p. 7.) The Court then directed B&G to submit to the Court "itemized time records of costs, expenses, and attorney's fees incurred in defending against the motion to vacate" so that the Court could determine an appropriate sanction. (*Id.*) B&G submitted the pertinent records (Doc 44), to which Postel objected (Doc. 50).

Postel's counsel now moves for reconsideration of the July 18, 2014 Order. (*See* Doc. 49.) Tellingly, he does not provide any new evidence or authorities regarding the "evident partiality" issue, as would ordinarily be required to justify relief under Federal Rule of Civil Procedure 60(b). (*See id.*) Instead, he argues that: (1) the sanctions against Postel were unwarranted because the standard for evident partiality "should be" that "any relationship that a potential arbitrator has to [an] opposing party's team should be closely scrutinized if not automatic grounds for disqualification"; and (2) the sanctions against him personally were unwarranted because he did not file the motion to vacate in bad faith.[3] (*See id.* ¶¶ 18–19.)

The Court is not persuaded. Regardless of what the standard for evident partiality "should be," controlling precedent requires more than the attenuated professional

---

sanctions are typically unwarranted. (*See* Doc. 39, ¶ 4 (citing *B.L. Harbert*, 441 F.3d at 914).) However, Postel did not then follow up with speculative dicta supporting its claims. (*See id.*) Instead, it simply reiterated the standard for evident partiality—actual conflict or known but undisclosed information that would "lead a reasonable person to believe that a potential conflict exists"—without addressing B&G's authorities governing the *application* of the standard. (*See id.* ¶ 5 (citing *Univ. Commons-Urbana*, 304 F.3d at 1339).) By definition, the standard itself is not "speculative dicta" regarding its own application, and therefore quoting it does not "cover" an otherwise frivolous claim.

[3] Postel's counsel also quoted the "speculative dicta" language from *B.L. Harbert*, again without citing any applicable dicta. (*See* Doc. 49, ¶ 12.)

relationships presented in this case. Postel and its counsel should have known as much since at least the filing of B&G's response, yet they continued to press their motion to vacate. To knowingly or recklessly pursue a baseless claim is to act in bad faith, and such conduct is sanctionable under both Rule 11 and 28 U.S.C. § 1927. *See* Fed. R. Civ. P. 11(b); *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1240–41 (11th Cir. 2007). Because the Court had ample grounds for sanctioning both Postel and its counsel, they are not entitled to reconsideration under Rule 60(b).

That said, as the sanctions have not yet been finalized, the Court retains the authority to amend its previous Order *sua sponte*. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1231 (11th Cir. 2010). After further review of the cases cited in B&G's motion for sanctions, the Court has decided to exercise that authority and amend its prior Order (Doc. 43) to impose sanctions only on Postel—not its counsel. Adequate notice of the possibility of sanctions is the Eleventh Circuit's primary touchstone for determining whether sanctions are appropriate in the post-arbitration context, *see* 441 F.3d at 914, and B&G did not cite any cases in which an attorney was sanctioned under the *B.L. Harbert* rationale. (*See* Doc. 38.) Where sanctions were awarded, courts imposed them upon the party itself. (*See id.* ¶ 13 (citing *Fornell v. Morgan Keegan & Co., Inc.*, No. 6:12-cv-38-Orl-28TBS, 2012 WL 3155727, at *5 (M.D. Fla. Aug. 3, 2012); *W. Flagler Assocs., Ltd. v. Unite Here Local 355*, No. 10-20316-CIV, 2012 WL 92766, at *2 (S.D. Fla. Jan. 11, 2012); *World Business Paradise, Inc. v. Suntrust Bank*, 403 F. App'x 468, 471 (11th Cir. 2010)).) Based on those authorities, it was clear that Postel risked *B.L. Harbert* sanctions, but it was less clear that its counsel did too. Under

the circumstances, the Court declines to impose sanctions on Postel's counsel.[4]

However, the Court makes explicit now what should have been clear before: an attorney's Rule 11 obligations include an obligation not to file motions that are factually unsupported or foreclosed by controlling precedent, regardless of his personal views on the law and regardless of client pressure. *See* Fed. R. Civ. P. 11(b)(2), (3). This obligation is particularly important in the arbitration context, where losing parties often have a financial incentive to challenge adverse awards, but doing so without "any real legal basis" breaks the "promise of arbitration." *B.L. Harbert*, 441 F.3d at 913.

The Court has reviewed B&G's submissions and Postel's objections (Docs. 44, 50), and, based on its judicial experience, it finds that an award in the amount of $10,000 against Postel is sufficient to deter future frivolous arbitration challenges. Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Steve Williard's Verified Motion for Reconsideration (Doc. 49) is **DENIED**.

2. The Court's July 18, 2014 Order (Doc. 43) is **AMENDED** as follows:

    a. Intervenor, Brasfield & Gorrie, LLC's Motion for Sanctions (Doc. 38) is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** to the extent that Brasfield & Gorrie, LLC seeks sanctions against Postel Industries, Inc.—not its counsel. In all other respects, the motion is **DENIED**.

    b. In all other respects, the July 18, 2014 Order remains in effect.

---

[4] The Court notes that Postel's president actively participated in preparing the motion to vacate by, at a minimum, providing the supporting affidavit evidence, and Postel has never contended that it was unaware of the substance of the motion or B&G's objections thereto. (*See* Docs. 31-4, 39.)

3. Postel Industries, Inc. is **DIRECTED** to pay Brasfield & Gorrie, LLC $10,000 in sanctions on or before December 10, 2014.

4. The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 10, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record